# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

REBECCA LYNN GREGG,      )
                            )
          Plaintiff,     )
                            )
v.                        )         CV422-114
                            )
DENIS MCDONOUGH, Secretary )
of Veterans Affairs,       )
                            )
         Defendant.    )

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, appearing *pro se*, filed this lawsuit alleging that she suffered employment discrimination and hostile work environment while employed as a Physician's Assistant at the Hinesville Community Based Outpatient Veterans Affairs clinic ("CBOC"). Before the Court is Defendant's Motion to Dismiss, doc. 7. Plaintiff filed her Response, doc. 9, and Defendant replied, doc. 13. Plaintiff sur-replied to Defendant, doc. 14, to which Defendant filed a Sur-sur-Reply, doc. 16. The Motion is, therefore, ripe for disposition.

## I.      Background and Procedural History[1]

Plaintiff was employed as a Physician's Assistant at the CBOC beginning in December 2016.  Doc. 14 at 2.  She alleges that beginning in November 2019, the nurse manager, Janet Triplett, began refusing to assign a nurse to assist her with patient care responsibilities.  Doc. 1 at 7.  Thus, unlike her male counterparts, Plaintiff was left with no support in caring for patients.  *Id.*  Triplett also purportedly held morning meetings where she used racist names and instructed other nurses to ignore Plaintiff's orders and discontinue addressing Plaintiff as "Doctor." *Id.*  In January 2020, Triplett "abruptly and unilaterally" changed Plaintiff's patient care policy to be different from the other providers' policies and refused to reinstate the uniform policy even after the Chief of Primary Care ordered her to reinstate it.  *Id.*  On January 29, 2020, Plaintiff filed a formal human resources complaint with the VA against Triplett.  *Id.*

After Plaintiff filed her HR complaint, a formal fact-finding investigation ensued.  Doc. 1 at 7.  Triplett reacted by reviewing

---

[1]   The Court relies on Plaintiff's presentation of the facts in this summary.  As discussed below, the standard factual presumptions applicable to motions to dismiss are complicated in this case.

Plaintiff's patient records, which resulted in Triplett reporting a finding of wrongdoing, and a counseling statement was placed in Plaintiff's file. *Id.*; *see also* doc. 14-1 (counseling statement).  The counseling statement, dated June 1, 2020, addressed an admonishment Plaintiff received on April 30, 2020, and is relevant to Plaintiff's failure to see patients on several occasions: January 2, 2020; January 6, 2020; January 13, 2020; December 10, 2019; and December 2, 2019.  Doc. 14-1 at 1.  The counseling statement was placed in Plaintiff's file despite Plaintiff's supervising physician's disagreement with the outcome.  Doc. 1 at 7. Plaintiff considers the counseling statement to be an adverse employment act, but Defendant disputes this, arguing that the statement does not constitute a reprimand.  *See* doc. 16 at 2-3.  Indeed, the statement indicates that "a decision [was] made to mitigate the proposed admonishment to a written counseling," as opposed to a reprimand.  Doc. 14-1 at 1.

Plaintiff continued reporting Triplett's behavior to the supervisors, claiming that she was being bullied, harassed, and discriminated against by Triplett.  Doc. 1 at 7.  On March 4, 2021, Triplett denied nurse coverage to Plaintiff again—this time due to a supposed nurse coverage

shortage, even though she had unnecessarily placed two nurses in a clinic which had no patients.  Plaintiff alleges this was an effort to needlessly deprive her of nurse support.  *Id.*  After Plaintiff questioned Triplett's illogical nurse assignment, Triplett left the clinic and never returned. *Id.*; doc. 9 at 4.  On June 4, 2021, EEO mediation was attempted but according to Plaintiff, Triplett refused to participate, and the meeting was abandoned.  She reports that she has been unable to return to the clinic since that date due to severe anxiety, PTSD, and depression.  Doc. 9 at 5.  Plaintiff alleges that the VA discriminated against her based on her race, color, gender/sex, and she makes claims for hostile work environment and retaliation, all in violation of Title VII, 42 U.S.C. §§ 2000e-2000e17.  *See, e.g.,* doc. 1 at 4.

## II.   Legal Standard

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction or under Rule 12(b)(6) when the complaint does not state a facially plausible claim for relief.  Here, Defendant argues that dismissal is appropriate on both grounds.  *See, e.g.,* doc. 7 at 1.  When a court has pending before it a motion to dismiss on both grounds, the preferable approach is to decide

the jurisdictional issue first and then, if jurisdiction is found, to decide whether a claim has been stated. *Jones v. Georgia*, 725 F.2d 622, 623 (11th Cir. 1984). As discussed below, the Government's jurisdictional argument turns on whether Plaintiff has properly exhausted her claims. In this Report and Recommendation, the Court must approach each claim and its exhaustion separately rather than determining if Plaintiff has globally exhausted all claims, because subject matter jurisdiction must be established claim by claim, not based on the action as a whole. *See, e.g., United States ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1176 (10th Cir. 2007) (Gorsuch, J.) ("[W]e hold that district courts should assess jurisdiction on a claim-by-claim basis . . .[,]" because "[t]his is . . . how federal courts traditionally assess challenges to their jurisdiction under Fed. R. Civ. P. 12(b)(1).") (citation omitted).

Rule 12(b)(1) motions such as the one presented by Defendant here are considered to be "factual attacks," based on evidentiary matters outside of the pleadings. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (discussing distinction between "facial" and "factual" attacks on subject matter jurisdiction). To resolve a factual attack, a court "may consider extrinsic

evidence such as testimony and affidavits," rather than being constrained to the allegations in the complaint. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). When faced with such a challenge to subject matter jurisdiction, a plaintiff has the burden to prove facts which show jurisdiction exists over her claims. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). In determining whether Plaintiff has met her burden, "it is proper for a judge . . . to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) (footnotes omitted) ; *see also Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424 (11th Cir. 2010).

On a motion to dismiss under Rule 12(b)(6), the other ground for dismissal asserted by Defendant, the factual allegations in a complaint are assumed true and construed in the light most favorable to the plaintiff. *See, e.g., Holland v. Carnival Corp.*, 50 F.4th 1088, 1091 n. 1 (11th Cir. 2022). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations omitted); *see also Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory" (citations and internal quotation marks omitted)).  Moreover, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Under any relevant standard, "[a] document filed *pro se* is 'to be liberally construed' . . . and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'".  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

## III.  Analysis

Defendant's jurisdictional argument requires an extensive analysis of precedent, for as Defendant acknowledged, "[t]here is some debate as to whether exhaustion defenses in employment discrimination cases are jurisdictional . . . or constitute an affirmative defense that must be raised in a Rule 12(b)(6) motion."  Doc. 7 at 8.  Though the Defendant references the issue as "largely academic," the Court must determine whether it has jurisdiction over claims before it can determine the merits of those claims.  *Home Depot U. S. A., Inc. v. Jackson*, ___ U.S. ___, 139 S. Ct. 1743, 1746 (2019) ("We have often explained that '[f]ederal courts are courts of limited jurisdiction.' . . . And lower federal-court jurisdiction 'is further limited to those subjects encompassed within a statutory grant of jurisdiction.'") (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U. S. 375, 377 (1994)).  In fact, "the district courts may not exercise jurisdiction absent a statutory basis," *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005), and a federal court is powerless to

act beyond its statutory grant of subject matter jurisdiction. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

A. *Statutory Exhaustion Procedures*

The Equal Employment Opportunity Commission ("EEOC") has adopted regulations setting forth the procedure that employees must follow in presenting discrimination claims to federal agencies. *See* 29 C.F.R. § 1614.101, *et seq.* The Eleventh Circuit references these procedures regularly, with some approval. *See Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1243–44 (11th Cir. 2012); *see also Basel v. Sec'y of Def.*, 507 F. App'x 873, 875 (11th Cir. 2013). The regulations provide, *inter alia*, that an aggrieved employee must "initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." 29 C.F.R. § 1614.105(a)(1). The purpose of this counselor-contact requirement is to allow the agency an opportunity to investigate the claim internally and "try to informally resolve the matter." *See* 29 C.F.R. § 1614.105(a).

If informal attempts to resolve the complaint are unsuccessful, the employee may file a formal complaint with the agency's EEO office. *See* 29 C.F.R. § 1614.106. If the agency dismisses the complaint, *see* 29 C.F.R.

§ 1614.107(a)(2), the agency will issue a final decision and that decision may be appealed to the EEOC Office of Federal Operations (OFO), *see* 29 C.F.R. § 1614.110(b).  A decision by the EEOC on appeal is final unless either party files a motion for reconsideration within 30 days.  *See* 29 C.F.R. § 1614.405(c).  A complainant may bring suit after 180 days have passed from the filing of the complaint or appeal, or within 90 days from the receipt of the agency's decision on the complaint or appeal.  *See* 29 C.F.R. § 1614.407.  However, she is not required to file an appeal to the EEOC.  Throughout the administrative process, the employee must provide all relevant and available information so the agency and the EEOC have notice of the claim being pursued and can properly investigate and consider it.  *See Crawford v. Babbitt*, 186 F.3d 1322, 1326-27 (11th Cir. 1999).

Because Plaintiff is a VA employee, she was first required to file her complaint with the Department of Veterans Affairs Office of Resolution Management, Diversity & Inclusion office ("ORMDI").  At the outset, the Court notes Plaintiff's ORMDI Complaint is not in the record.  Instead, the Defendant's arguments are based on the Notice of Partial Acceptance of EEO Complaint, a determination made by the ORMDI after Plaintiff

initiated contact.  *See* doc. 7-1.  Although no party has explicitly stated so, it appears that the Plaintiff brought suit rather than appealing to the EEOC-OFO.  *See* doc. 1 at 13 (explaining the right to file a civil action within 90 days of receipt of final decision or within 90 days after receipt of EEOC-OFO's final decision on appeal, suggesting the EEOC appeal has not yet occurred.).  The ORMDI Notice, dated April 27, 2021, indicates that Plaintiff failed to state a claim regarding her treatment as a PA under § 1614.103 because she failed to allege an EEO-law-recognized basis of discrimination, such as race, sex, age, national origin, sex, color, genetic information, religion, or reprisal.  Doc. 7-1 at 1.  In other words, the determination was that Plaintiff's status as a veteran or a veteran PA is not a protected characteristic under Title VII.  *Id.* ("Veterans status is not a legal basis of discrimination under EEO laws and regulations.").

The ORMDI also determined that Plaintiff abandoned her 2020 nurse reassignment claims and dismissed them under 29 C.F.R. § 1614.107.  *See* doc. 7-1 at 1-2.  In this holding, the ORMDI opinion is puzzling.  It first holds that Plaintiff did not present the 2020 claims during EEO counseling and thus those claims were barred.  *See id.* at 1

("'prior to a request for a hearing in a case, the agency shall dismiss an entire complaint [or portion, 29 C.F.R. §1614.107(b)] that raises a matter that has not been brought to the attention of a Counselor. . . .'" (quoting 29 C.F.R. § 1614.107(a)(2))).  On the other hand, the ORMDI also based its opinion on the premise that "where a Complainant raises a matter during EEO Counseling, but later does not include that issue in the formal complaint, she cannot resurrect it later during processing concerning the abandoned claim." Doc. 7-1 at 2; *see also id.* ("Claims/events that a Complainant knew about (or reasonably should have known about) at the time of filing a formal complaint of discrimination, that are not included in the formal complaint, are abandoned and cannot be resurrected later through the amendment process.").  Given those varying explanations, the reason why the 2020 allegations were dismissed is unclear; it is unclear what Plaintiff included in her charge (because it is not in the record before the Court), and it is unclear whether Plaintiff defaulted by failing to bring her 2020 nurse reassignment claims in counseling or if she did in fact raise the issue in counseling but failed to include the claim in her formal

complaint.  In any event, the claims were dismissed for failure to state a claim.  *Id.* at 2.

The Final Agency Decision, submitted by Plaintiff along with her Complaint, indicates agreement with the initial ORMDI decision to dismiss "two of Complainant's bases pursuant to 29 C.F.R. § 107 (a)(1) for failure to state a claim," thus accepting for review only the two incidents occurring on February 5, 2021 and March 4, 2021, when the nurse was reassigned from Plaintiff.  Doc. 1 at 9, n. 1.  Because the only claims accepted for review were whether Plaintiff was discriminated against on those dates, Defendant argues that all other claims brought by Plaintiff in her Complaint are unexhausted.   Doc. 7 at 4, 11.  Specifically, Defendant alleges that Plaintiff's hostile work environment claims, retaliation claims, and the more generalized claims regarding nurse reassignment dating back to 2020 are unexhausted, leaving only the question of whether she was discriminated against on February 5, 2021 and March 4, 2021.  Doc. 7 at 3-4, 11.

B.  *Subject Matter Jurisdiction*

Defendant argues that Plaintiff failed to exhaust her claim.  Doc. 7 at 9; *see also id.* at 3-4 (discussing history of Plaintiff's administrative

complaints).  Moreover, it explains that "Plaintiff's failure to exhaust her administrative remedies on any claim constitutes a failure to satisfy the requirements to waive sovereign immunity and, thus, strips this Court of subject matter jurisdiction to hear those claims."[2]  Doc. 7 at 9-10.

Eleventh Circuit precedent requires federal employees to pursue and exhaust administrative remedies as a jurisdictional prerequisite to filing a Title VII action.  *Crawford*, 186 F.3d at 1326; *Peppers v. Cobb Cty., Ga.*, 835 F.3d 1289, 1296-7 (11th Cir. 2016) ("We have treated the administrative exhaustion requirement as a 'jurisdictional prerequisite to filing a Title VII action.'" (quoting *Crawford*, 186 F.3d at 1326); *Brown v. Snow*, 440 F.3d 1259, 1262 (11th Cir. 2006) ("Both federal statutes and EEOC regulations require a federal employee to exhaust an administrative process before filing a civil complaint of discrimination in

---

[2] Defendant's sovereign immunity argument is unsupported but not wholly incorrect. Suffice to state that Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c), addresses employment by the federal government and provides for a waiver of sovereign immunity under Title VII, but the contours of that waiver are limited to actions challenging discriminatory or retaliatory conduct.  *See Gomez–Perez v. Potter,* 553 U.S. 474, 491(2008); *West v. Gibson,* 527 U.S. 212, 214 (1999).  "Attached to that right [to bring a civil action against the United States], however, are certain preconditions."  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976).  As the Court explained in *Gomez-Perez*, waiver of sovereign immunity is "strictly construed, in terms of its scope, in favor of the sovereign."  553 U.S. at 491 (internal quotations and citation omitted).  Thus, the "preconditions" recognized in *Brown* plausibly implicate the United States' sovereign immunity.

the workplace."). Under this rule, federal employees must make "a good faith effort to comply with the regulations and, particularly, to provide all the relevant, specific information available to him or her,'" before jurisdiction may be established.  *Crawford*, 186 F.3d at1326 (internal quotation marks and citation omitted); *see also Brown,* 440 F.3d at 1263 (quoting *Wade v. Sec'y of the Army*, 796 F.2d 1369, 1376 (11th Cir. 1986)).

However, precedent also calls into doubt whether jurisdiction is subject to question when statutory procedural requirements are not met. Particularly relevant here, in *Fort Bend County, Texas v. Davis*, the Supreme Court recently ruled that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." -- U.S.--, 139 S. Ct. 1843, 1851 (2019).  Likewise, in *Jackson v. Seaboard Coast Line R. Co.*, the Eleventh Circuit found that the requirements contained in 42 U.S.C.  § 2000e–5 were "conditions precedent" to bringing suit and not jurisdictional prerequisites.  *Jackson v. Seaboard Coast Line R. Co.,* 678 F.2d 992, , 999  n. 7, 1009-10 (11th Cir. 1982) (The conditions precedent to a Title VII action, "generally found in 42 U.S.C. § 2000e–5[,]" . . . "are not jurisdictional prerequisites, which if not satisfied deprive

15

federal district courts of subject matter jurisdiction."). The *Jackson* Court further explained that numerous Supreme Court decisions have held, directly and indirectly, that several of Title VII's individual administrative exhaustion requirements do not affect subject matter jurisdiction, and its holding is quite broad. *Id.* at 1005-1009 ("The clear implication of these decisions is that the filing of an EEOC charge is not a jurisdictional prerequisite." (citing, *inter alia*, *Zipes v. Trans World Airlines,* 455 U.S. 385, 393 (1982); *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir. 1983) (holding that Title VII preconditions are not jurisdictional prerequisites to the Title VII waiver of Eleventh Amendment immunity when the defendant is an arm of the state); *Milam v. United States Postal Service*, 674 F.2d 860, 862 (11th Cir. 1982) ("Timely filing [a complaint pursuant to Title VII's statute of limitations] is not a prerequisite to federal jurisdiction."))). These cases appeared to be in line with Supreme Court directives to consider distinctions between "jurisdictional rules, which define the cases or persons within a court's adjudicatory authority, and mandatory claim-processing rules, which govern the orderly process of litigation." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d

16

707, 722 (11th Cir. 2020) (citing *Fort Bend County*, 139 S. Ct. at 1848-9);

*see also Mohasco Corp. v. Silver*, 447 U.S. 807, 811, 811 n. 9 (1980)

(addressing the merits of a Title VII action, even though the plaintiff had

not timely filed the action within 90 days of receiving a right to sue letter,

because the defendant did not assert the failure to file the action within

90 days as a defense).

    As several district courts have grappled with application of these

holdings, some have distinguished between certain aspects of presuit

exhaustion which they held constitute jurisdictional prerequisites versus

those which were considered mere preconditions to suit.    *See e.g.,*

*Baskerville v. Sec'y of Dep't of Veteran Affairs*, 377 F. Supp. 3d 1331, 1334

n.1 (M.D. Fla. 2019) ("Attacks on a Title VII plaintiff's 'failure to exhaust'

administrative remedies can be jurisdictional or on the merits[,]"

depending on whether they constitute procedural requirements or not);

*Lee v. DeJoy*, 2021 WL 4838695, at *5 (N.D. Ga. May 18, 2021) (citing

*Baskerville* and noting that the jurisdictional aspect of exhaustion is

whether the complainant made a good faith effort to comply with the

regulations and, particularly, to provide all the relevant, specific

information available to him or her.) (citations and quotations marks

omitted).   Meanwhile some assume *Jackson* does not apply to federal employees and exhaustion is jurisdictional.   *Nodd v. Integrated Airline Servs., Inc.*, 41 F. Supp. 3d 1355, 1362 n. 6 (S.D. Ala. 2014) (referencing the "exhaustion jurisdictional requirement for federal employees" and determining it did not apply to a private citizen.).   Still others disagree and find that none of the exhaustion requirements are jurisdictional.   *See Bennett v. McDonough*, 2023 WL 204828, at *4 n. 5 (M.D. Fla. Jan. 17, 2023) (noting "Several circuits and the Supreme Court have questioned the propriety of *Crawford*'s conclusion that a pre-suit administrative notice requirement constitutes a jurisdictional bar, rather than a required condition precedent to an action." (citations omitted)); *see also Wallace v. Holder*, 846 F. Supp. 2d 1245, 1252 n. 7 (N.D. Ala. 2012) (rejecting the defendant's jurisdiction-based exhaustion argument and finding *Grier v. Sec'y of Army[3]* and *Crawford v. Babbitt* to be "devoid of any on-point analysis of the differences between private and federal

---

[3] The *Grier* Court, in a federal employee case, seems to have acknowledged the distinction implicitly but does not meet the jurisdiction issue presented here head on: "While the timeliness requirement does not erect a jurisdictional prerequisite to suit this does not suggest[ ] that parties complaining of federal employment discrimination in violation of Title VII should ever be waived into court without filing *any* initial charge with the agency whose practice is challenged." *Grier v. Sec'y of Army*, 799 F.2d 721, 724 (11th Cir. 1986) (internal quotation marks and citations omitted).

sector employment in the context of applying Title VII's administrative exhaustion requirements.").

Much of the progeny distinguishing the two is reliant upon parsing the exact verbiage from the Supreme Court's holding in *Zipes v. Trans World Airlines,* which appears to have been interpreted to apply explicitly to procedural questions, such as timeliness. 455 U.S. at 393 ("The provision granting district courts jurisdiction under Title VII, 42 U.S.C. §§ 2000e–5(e) and (f), does not limit jurisdiction to those cases in which there has been a *timely* filing with the EEOC (emphasis added)); *Ramirez*, 686 F.3d at 1243 ("However, the 45–day time limit is not jurisdictional; rather, it functions like a statute of limitations, and, "like a statute of limitations, [it] is subject to waiver, estoppel, and equitable tolling." (citing *Zipes*, 455 U.S. at 393)). Pursuant to this distinction, courts have long applied and enforced the holding of *Crawford* upon federal employees despite *Jackson* and similar holdings because *Crawford*, a panel decision, is explicitly applicable to them.[4] Indeed, as

---

[4] *Crawford* constitutes binding precedent because "only the Supreme Court or [the Eleventh Circuit] sitting *en banc* can judicially overrule a prior panel decision." *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) (citing *United States v. Woodard*, 938 F.2d 1255, 1258 (11th Cir. 1991), *cert. denied*, 502 U.S. 1109 (1992)). Furthermore, the case has not been abrogated as applied to federal employees.

many courts have noted, "Congress placed the primary responsibility of keeping federal agencies free from employment discrimination on the agencies themselves." *See, e.g., Bloodworth v. Colvin*, 17 F. Supp. 3d 1245, 1249 (N.D. Ga. 2014).

The distinction between conditions precedent and jurisdictional prerequisites is vital to determining which party bears the burden of proving exhaustion in this case. For, "while a plaintiff may generally allege that it has satisfied all *conditions precedent* to filing suit (including timeliness), a defendant wishing to deny the occurrence of a condition precedent must do so with particularity, and failing in this may be barred from later raising such an argument." *Knott v. DeKalb Cnty. Sch. Sys.*, 2014 WL 10919525, at *14 (N.D. Ga. July 16, 2014) (citing *Jackson*, 678 F.2d at 1009-10). If a defendant specifically denies the performance of a condition precedent, the burden shifts to the plaintiff to prove that the condition has indeed been satisfied. *Id.*; Fed. R. Civ. P. 9(c) ("[W]hen denying that a condition precedent has occurred or been performed, a party must do so with particularity."). Conversely, plaintiffs must usually establish jurisdiction when bringing a claim. *See, e.g., Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016)

("The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." (internal citation and quotes omitted)). However, in this scenario—assuming that exhaustion remains a jurisdictional issue--because the Defendant's argument hinges on whether Plaintiff made a good faith effort to comply with the regulations and, particularly, whether she provided all the relevant, specific information available to her counselor, it appears that Defendant has plausibly questioned the Court's subject matter jurisdiction as to Plaintiff's hostile work environment claim pursuant to *Crawford*. *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 168-69 (11th Cir. 1988) (analyzing as jurisdictional question whether EEOC complaint encompassed retaliation claim); *see also Wu v. Thomas*, 863 F.2d 1543, 1546-47 (11th Cir. 1989) (same).

Plaintiff's response to the exhaustion argument alleges that "[d]espite [EEO] policy and my request to consider my previous complaints, [the investigator] refused to look at any reported instances of discrimination and harassment and only addressed the incidents I reported on February 5,2021, and March 4, 2021." Doc. 9 at 6. Plaintiff does not supplement her allegations with any support, though, and the

Court is left with its jurisdiction in doubt.  Accordingly, the Court must discharge its independent obligation to confirm jurisdiction is present.  The Court, therefore, turns to each claim asserted by the Plaintiff to determine which claims are affected by this uncertainty.  *United States ex rel. Boothe*, 496 F.3d at 1176.

### C. *Hostile Work Environment*

Plaintiff's broadest claim is that Triplett's behavior created a hostile work environment spanning years, but the Defendant argues that because the claims were not accepted by the agency, they are not exhausted.  Doc. 7 at 9-11.  As explained above, the claims were not accepted for reasons which are unsupported in the record.  Moreover, Plaintiff claims the examiner refused to acknowledge her full claim, and "[i]f the employee is hampered by the action of the agency . . ., he or she should not be deemed thereby to have failed to comply with exhaustion requirements." *Wade*, 796 F.2d at 1377; *Brown*, 440 F.3d at 1264.

Accepting Defendant's argument that the Court's jurisdiction hinges on Plaintiff's good faith efforts, it is not clear whether the record, as it stands, requires dismissal.  Indeed, cases have been dismissed for lack of subject matter jurisdiction when the employee did not provide

information requested by the investigating agency. *See, e.g., Crawford*, 186 F.3d at 1326-27 (affirming dismissal where plaintiff failed to respond to the Agency's request for information relevant to her claim for compensatory damages and holding she failed to exhaust her administrative remedies.); *Johnson v. Bergland*, 614 F.2d 415, 417 (5th Cir. 1980) (affirming that administrative complaint was vacated because plaintiff failed to comply with the administrative requirement that he make his generalized complaints more specific.). On the other hand, the Eleventh Circuit reversed a dismissal for lack of subject matter jurisdiction when it was *unclear from the record* whether an employee had provided the agency with the information needed to investigate the complaint. *Brown*, 440 F.3d at 1263 (discussing with approval the holding of *Wade*, 796 F.2d at 1378: "[b]ecause we could not discern from the record whether the employees had 'made a good faith effort to comply with the regulations . . . we reversed the district court and remanded to 'allow the district court to consider the exhaustion requirement in light of the information presented to the agency and complaints examiner by [the employees].'"(internal citations omitted)).

The Court is unable to discern from the record whether Plaintiff has established jurisdiction on her hostile work environment claim, but it is not prepared to dismiss Plaintiff's *pro se* case, especially given: (1) Defendant's limited argument regarding whether exhaustion is jurisdictional; (2) Plaintiff's arguments that the investigator "refused" to look at her broader claims and the contradictory ORMDI opinion; (3) the Eleventh Circuit's treatment of exhaustion, in some contexts, as a condition precedent; and (4) district courts' disagreement on whether jurisdiction is affected by exhaustion when the plaintiff is a federal employee. *Goodridge v. Astrue*, 2008 WL 8691093, at *1 (N.D. Ga. Mar. 20, 2008) ("It is clear that a federal employee must timely exhaust administrative remedies before filing an employment discrimination suit under Title VII[, but i]t is somewhat less clear . . . whether the exhaustion requirement is a jurisdictional prerequisite or simply a condition precedent to filing suit . . . ."); *see also Wallace*, 846 F. Supp. 2d at 1253. It is unclear as to whether Plaintiff abandoned her claim because the ORMDI notice of acceptance is contradictory. *See* doc. 7-1. Accordingly, the Court Recommends **DENYING** Defendant's 12(b)(1) Motion to Dismiss Plaintiff's hostile work environment claim without prejudice,

and, if the District Judge adopts that recommendation, **ORDERING** Plaintiff to supplement her pleadings so that the Court may to confirm whether subject matter jurisdiction exists on this claim **within thirty (30) days** of the date of the District Judge's Order. Doc. 7, in part. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials.  In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.").

To that end, Plaintiff may submit affidavits, as well as other admissible evidence of her "good faith effort" to assist in the investigation of her claims, and to further explain to the Court in what manner the counselor "refused" to acknowledge her additional claims.  She is explicitly instructed to provide any documents which she obtained during her efforts to work with the EEO and/or the ORMDI.  She is forewarned that submissions relevant only to the merits of her claims will not be considered, and **her failure to support her exhaustion of**

**administrative remedies may result in dismissal of the hostile work environment claim without consideration of the merits.** To the extent that the Plaintiff is not in possession of documentation of her claim, the Court will entertain requests for limited discovery specifically relevant to whether and to what extent Plaintiff exhausted her hostile work environment claim. *See Chevaldina v. Katz*, 787 F. App'x 651, 653-64 (11th Cir. 2019) (per curiam) (defendants mounted a factual jurisdictional challenge by presenting deposition testimony and other extrinsic evidence in support of its Rule 12(b)(1) motion; *Irvin v. United States*, 2007 WL 9706489, at *3 (N.D. Ga. Oct. 9, 2007) ("Defendant's motion to dismiss for lack of subject matter jurisdiction is based on Plaintiff's failure to prove that he has exhausted his administrative remedies, and both Plaintiff and Defendant have attached exhibits on this point. Thus, the inquiry is in the nature of a factual attack and necessarily requires the examination of evidence outside the complaint to determine if Plaintiff, indeed, failed to exhaust his administrative remedies.").

### D. Retaliation

Plaintiff's allegations relevant to retaliation are that Plaintiff filed an HR complaint against Triplett on January 29, 2020, Triplett initiated an investigation of Plaintiff's patient care history thereafter, and based on that investigation, Plaintiff received an admonishment from her supervisor on June 1, 2020.  Doc. 1 at 7.  The activity which she alleges was retaliatory occurred well before she initiated contact with her EEO counselor on March 5, 2021.  Doc. 9 at 4.  However, these circumstances are not mentioned by the ORMDI Notice of Partial Acceptance or the Final Agency Decision.  Doc. 1 at 8-16; Doc. 7-1.  She has therefore, apparently failed to exhaust these claims.  *See Litman v. Sec'y, of the Navy*, 703 F. App'x 766, 772 (11th Cir. 2017) ("Though this Court has cautioned against strictly interpreting the scope of an EEOC complaint, Litman's failure to mention his hostile work environment claim and the corresponding factual allegations would otherwise preclude the EEOC from performing its role in obtaining voluntary compliance and promoting conciliation efforts on that claim.");  *Wu*, 863 F.2d at 1547 ("One such area in which [the Eleventh Circuit] has recognized that strict compliance with Title VII is unnecessary is where the plaintiff has filed

a charge with the EEOC, but in her judicial action the plaintiff raises related issues as to which no filing has been made.").

Plaintiff's retaliation claim differs from her hostile work environment claim because there is no question as to whether she made a good faith effort to assist her counselor in the investigation, as required of federal employees under *Crawford*. Thus, notwithstanding any dispute about whether this determination is jurisdictional in nature, Plaintiff's more obvious failure to attempt to exhaust her retaliation claim is grounds for dismissal. *See Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 954 (11th Cir. 2019) ("A plaintiff must first exhaust his administrative remedies with the [EEOC] before filing a complaint for discrimination under Title VII . . . . This is a mandatory claims processing rule, not a jurisdictional prerequisite. . . .") (citing *Fort Bend County,*, 139 S. Ct. at 1851.

Moreover, Plaintiff's failure to exhaust her retaliation claim is not excused. The Complaint is limited by the scope of the investigation "that can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal marks omitted); *Basel,* 507 F. App'x at 876 ("Where a retaliation

claim grows out of an administrative charge that the plaintiff properly presented to the court, the district court has ancillary jurisdiction over the claim."); *Baker*, 856 F.2d at 168-69 (finding it unnecessary for a plaintiff to exhaust prior to urging a retaliation claim growing out of an earlier charge.).  Given the timeline of the events leading to Plaintiff's filing of her Complaint, a prior claim of retaliation cannot be said to have reasonably grown from the discrimination charge, but rather was part and parcel to that same charge and should have been brought to the agency before she filed her case in court.  Thus the Defendant's Motion to Dismiss should be **GRANTED** on Plaintiff's retaliation claim.[5]  Doc. 7, in part.

## E. *Discrimination*

Plaintiff has exhausted her administrative remedies as to claims resulting from instances of alleged discrimination occurring in 2021, and Defendant does not dispute that she exhausted claims arising from events specifically occurring on February 5, 2021 and March 4, 2021.  *See*

---

[5] Given the reasoning described above, the Court makes this determination on 12(b)(1) grounds, finding that at the least, the Court has no "ancillary jurisdiction" *Basel,* 507 F. App'x at 876, to hear Plaintiff's retaliation argument, implicitly accepting *Crawford's* instruction even though, as discussed, other Courts have not followed its holding.

doc. 7-1 at 4 (Dismissing Plaintiff's 2021 discrimination claim for failure to state a claim after analyzing it.).  However, Plaintiff's discrimination claim fails on the merits.

*McDonnell Douglas* set out the often-repeated burden shifting framework for analyzing a case of employment discrimination on summary judgment.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  It first demands that a plaintiff establish a prima facie case of discrimination: (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated "similarly situated" employees outside her class more favorably.  *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802), abrogated on other grounds by *Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019).  However, *McDonnell Douglas* does not dictate the plaintiff's burden at the motion to dismiss stage because that framework is an evidentiary standard, not a pleading requirement.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  Rather, "[t]o state a [discrimination] claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest

intentional . . . discrimination.'" *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)).   Consistent with *Twombly and Iqbal*, the focus at the motion to dismiss stage is whether the complaint "plausibly suggest[s]" intentional discrimination. *Surtain*, 789 F.3d at 1246.

*McDonnell Douglas* nevertheless remains relevant at the motion to dismiss phase because, ultimately, the failure of a plaintiff to allege that she has been damaged, *i.e.*, suffered an adverse employment action, or that the employer intentionally caused the damage, *i.e.*, treated her less favorably than employees outside her protected class, also may mean she failed to state a claim of intentional discrimination as a matter of law. *Surtain*, 789 F.3d at 1246; *see also Ashcroft*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570).   Consequently, even though the burden shifting framework is not controlling, the parties relied on the fundamentals of the framework to brief the merits of their dispute. *See*, *e.g.*, doc. 7 at 12-16.

For example, Defendant relies upon Plaintiff's failure to allege an adverse event constituting a "material change in the terms, conditions,

or privileges of employment," in seeking dismissal. Doc. 7 at 13 (citing *Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008)). Plaintiff counters that she was, in fact, subjected to adverse employment action, as demonstrated by the counseling statement which Plaintiff received allegedly in retaliation for filing her formal HR complaint. Doc. 9 at 7. She also claims that she has suffered a decline in mental health. *Id.* at 7-8. Defendant further submitted that the counseling statement was mitigated and therefore does not constitute a reprimand or adverse action. Doc. 16 at 1.

However, in supporting her adverse act argument, Plaintiff seeks to rely upon evidence which is relevant to her retaliation claim, namely the counseling statement she received after Triplett investigated her. Although the Court recognizes that circumstances may arise where various employment claims may be so intertwined that the same evidentiary support may support multiple claims, *see, e.g., Davis v. U.S. Postmaster Gen.*, 190 F. App'x 874, 876-77 (11th Cir. 2006) (Plaintiff argued that the same incidents that supported disparate treatment claim also established that the Postal Service retaliated against him for filing charges with EEOC), the Court is unable to overlook her failure to

exhaust the investigation-based allegations and allow them to support her discrimination claim. *Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840 (11th Cir. 2005) (where all of the factual allegations contained in Green's EEOC charge related to his termination and none related to other claims, Court affirmed finding that other claims were procedurally deficient.) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) (explaining that a Title VII complaint may encompass only the kinds of discrimination like or related to the allegations contained in the EEOC charge)). Additionally, many other events of alleged discrimination, including that Triplett instructed nurses to reference Plaintiff as Ms. Gregg instead of Dr. Gregg, or to use racist names, appear to be unexhausted as well.   Like her allegations of retaliation, they are also not present in the Notice of Acceptance or Final Agency Decision. *See* Doc. 7-1; Doc. 1 at 8-16

The ORMDI acceptance notice describes Plaintiff's complaint as "involving assignment of a nurse to assist with [Plaintiff's] duties" on two dates, February 5, 2021 and March 4, 2021.  Doc. 7-1 at 1.  Meanwhile, Plaintiff's Complaint alleges that from November 2019 to March 2021 Triplett discriminated against her by denying nurse coverage.  Doc. 1 at

7.  The counseling statement is dated June 1, 2020.  Doc. 14-1 at 1.  The discrimination ended when it was discovered that the nurse manager improperly scheduled nurse coverage again, but then left and never returned to the clinic on March 4, 2021.  Doc. 1 at 7.  It follows that Plaintiff knew about the investigation and counseling form when she made her report to the ORMDI on April 12, 2021—almost one year after she filed the human resources report and received the counseling statement—but it appears she did not discuss it with the ORMDI, as there is no mention of it in the acceptance notice.  *See generally* doc. 7-1. The Court cannot allow Plaintiff to bolster her discrimination claim with evidence of discrete unexhausted claims which predate it.  Accordingly, to the extent Defendant seeks dismissal of Plaintiff's pre-2021 discrimination claims on Rule 12(b)(1) grounds, the Court should **GRANT** its request.  Doc. 7, in part.

Given that the Court lacks the full administrative record, it is unable to conclusively distill Plaintiff's remaining claims into discrimination occurring only on two 2021 dates but rather considers also that she "repeatedly reported" Triplett's behavior to her supervisors and that the reports went ignored, allegations which encompass a more static

timeframe and could have been part of an investigation which would "reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d at 1280 ("The proper inquiry here therefore is whether Dr. Gregory's complaint was like or related to, or grew out of, the allegations contained in her EEOC charge.").

Nevertheless, the remaining factual allegations regarding Triplett's nurse reassignment do not state a cognizable claim of discrimination under Title VII.  First, Defendant is correct that Plaintiff has not alleged an adverse employment action.  *See* doc. 7 at 13.  Instead, Plaintiff's allegations of nurse reassignment amount to an allegation that Plaintiff was required to work more, or differently than what she believes should have been required.  Requiring that an employee perform extra work is not an adverse employment action.  *See Tran v. The Boeing Co.*, 190 F. App'x 929, 934 n.3 (11th Cir. 2006) (per curiam) ("None of Plaintiff's other allegations [such as] receiving excess work . . . rise to the level of an adverse employment act."); *Barr v. Silberg*, 2020 WL 5097556, at *5 (S.D. Ga. Aug. 28, 2020) ("Plaintiff having to teach five classes instead of four—particularly where there is evidence that others in Plaintiff's position had been required to do the same—" does not

constitute an adverse employment action); *Hudson v. Univ. of Ala. Healthcare Sys.*, 2016 WL 4132274, at *3 (S.D. Ala. Aug. 3, 2016) (employer assigning an employee a double workload did not constitute an adverse employment action); *cf. McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800 (11th Cir. 2014) ("[A]bsent unusual circumstances, [work assignment claims] typically do not constitute adverse employment actions."); *Register v. Cleaver-Brooks, Inc.*, 2014 WL 3508101, at *7 n.8 (M.D. Ga. July 14, 2014) ("Title VII did not prohibit [defendant] from requiring [p]laintiff to perform extra work . . . .").

Defendant also argues that Plaintiff fails to state a claim because she fails to identify similarly-situated comparators, but at this stage in the litigation, the Court is unable to reach the same conclusion. To sufficiently identify a comparator, a plaintiff must show that she and her comparators are "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019). Whether a comparator meets this standard is determined "on a case-by-case basis, in the context of individual circumstances." *Id.* at 1227. In other words, "[d]etermining whether a plaintiff and comparator are 'similarly situated in all material respects' is a fact-intensive inquiry better suited to

summary judgment." *Alvarez v. Lakeland Area Mass Transit Dist.*, 406 F. Supp. 3d 1348, 1354 (M.D. Fla. 2019) (citing *Lewis*, 918 F.3d at 1218). Plaintiff does assert that the male doctors were "always given nursing coverage," but the record is simply not developed enough to indicate whether the other doctors "engaged in the same basic conduct (or misconduct) as the plaintiff;" were "subject to the same employment policy, guideline, or rule;" had the same supervisor; or "share[d] the plaintiff's employment or disciplinary history." *Lewis*, 918 F.3d at 1227-28.

Plaintiff has also failed to assert any employer action rising to the level of  discrimination.  She makes no justiciable discrimination claim against any decision maker, as opposed to a co-employee. *See Harrison v. Belk, Inc.*, 748 F. App'x 936, 943 (11th Cir. 2018).  To be sure, under a "cat's paw" theory, liability may be established if the plaintiff shows that the decisionmaker merely "followed the biased recommendation [of a non-decisionmaker] without independently investigating the complaint against the employee." *Id.* at 942 (quoting *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999)).  But here, Plaintiff has not made any nonconclusory allegation that her employer blindly

followed Triplet's allegedly biased recommendations.   Moreover, she claims that her supervisor did not agree with the counseling statement but signed off on anyway, *see* doc. 1 ("[Dr. Purvis] had nothing to do with the reprimand, he did not agree with it and he was just ordered to sign it"), but the record reflects that the actual decision was not signed by Dr. Purvis, and the supervisor ultimately rejected the allegations made against Plaintiff anyway.   Doc. 14-1.   Thus, even assuming that Plaintiff may rely on the counseling statement she attached to her response, it does not support her discrimination claim.   Accordingly, Defendant's Motion to Dismiss Plaintiff's discrimination claim should be **GRANTED** under Rule 12(b)(6). [6]   Doc. 7, in part.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss should be **GRANTED, in part,** as to Plaintiff's discrimination and retaliation claim.   Doc. 7, in part.   Defendant's Motion to Dismiss Plaintiff's hostile work environment claim should be **DENIED, in part**.   Doc. 7, in part.   If the District Judge adopts the latter recommendation, Plaintiff should be

---

[6] This conclusion does not foreclose Plaintiff's hostile work environment claim.   *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002)(discussing when liability for a hostile work environment may be imputed to the employer even though the source of the harassment was a coworker.).

**ORDERED** to supplement the record with evidence of her exhaustion efforts regarding her hostile work environment claim, as discussed above.

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED and RECOMMENDED,** this 9th day of February, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA